## LOUISIANA RY. & NAV. CO. OF TEXAS v. COTTON. (No. 10085.)

Court of Civil Appeals of Texas. Dallas. Nov. 19, 1927.

**1. Witnesses ⬯397—Testimony of jurors at former trial as to witness' testimony not being admissible as original evidence should have been limited to impeachment.**

In action for personal injury from railroad crossing collision, where defendant's engineer testified he got stop signal after street was covered and tender was at edge of walk on west side of street, testimony of jurors at former trial that witness testified he got signal when engine was on east side of street should have been limited to impeachment, since it was not admissible as original evidence against railroad because it offered engineer as a witness at former trial.

**2. Evidence ⬯207(1) — Material admissions contained in depositions, abandoned pleadings, and statements used by parties to suit are admissible as original evidence.**

Material admissions against interest, contained in depositions used at former trial and in abandoned pleadings and affidavits or written statements by third parties, and used by parties

to suit, may be offered as original evidence as admission by party filing pleading or using writing, to be given probative effect trier of fact believes them entitled to.

**3. Railroads ⬯350(7, 11)—Railroad's excessive speed and failure to give signals held for jury.**

In action for personal injury to passenger in automobile with which engine collided at a crossing, railroad's request for peremptory verdict was properly denied where questions of its excessive speed and failure to give signal by bell and whistle were, under evidence, for jury.

**4. Railroads ⬯351(3)—Charge that burden was on railroad to establish plaintiff's contributory negligence by preponderance of evidence held proper.**

In action for personal injury to passenger of automobile with which engine collided at a crossing, charge that burden was on defendant to establish plaintiff was guilty of contributory negligence by preponderance of evidence *held* proper, where evidence was not sufficient to establish plaintiff's negligence so as to render it unnecessary to admit issue thereof.

**5. Railroads ⬯346(5)—That evidence established prima facie showing of plaintiff's negligence did not shift burden of proving contributory negligence from railroad.**

In action for personal injury to passenger in automobile with which engine collided at crossing, even though plaintiff's testimony established prima facie showing that she was negligent, such fact did not shift burden of proving contributory negligence from defendant, where evidence was not sufficient to establish plaintiff's negligence, as matter of law.

**6. Negligence ⬯122(2)—If plaintiff's testimony established contributory negligence, plaintiff had burden to relieve herself thereof.**

In personal injury action, if plaintiff's testimony established that she was guilty of contributory negligence, then burden would shift from defendant on issue thereof to plaintiff to relieve herself of natural sequence, which would follow proof of such negligence.

**7. Railroads ⬯350(21)—Whether failure of automobile passenger to look and listen for train was negligence held for jury.**

In action for injury to passenger in automobile with which engine collided at crossing, evidence of failure of plaintiff to look or listen for approaching train before passing over crossing was for jury, since it would not establish contributory negligence per se.

**8. Negligence ⬯141(11)—Refusal to charge on joint enterprise held proper, where evidence showed plaintiff was guest of automobile driver.**

In action for personal injury to passenger in automobile with which defendant's engine collided at a crossing, refusal to charge that plaintiff and the automobile driver were engaged in a joint enterprise at time of collision was not error, where evidence showed no relationship other than that plaintiff was a guest of the driver who was in control of the automobile.

---

⬯For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from District Court, Hunt County; Newman Philips, Judge.

Action by Willie Cotton against the Louisiana Railway & Navigation Company of Texas. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

B. M. McMahan, of Greenville, and Touchstone, Wight, Gormley & Price, of Dallas, for appellant.

H. L. Carpenter, of Greenville, for appellee.

VAUGHAN, J. Appellee, Willie Cotton, a feme sole, instituted this suit in the court below to recover from appellant, Louisiana Railway & Navigation Company of Texas, a corporation, $5,000 in damages actually sustained and $2,000 in damages to accrue, all of which damages were alleged to have resulted to appellee from injuries received in a collision between one of appellant's trains and an automobile in which appellee was riding in Greenville, Tex., November 1, 1925, as a guest of one George Ponder, not a party to this suit.

Appellant answered by pleas of general demurrer and denial and contributory negligence.

The cause was submitted to the jury on the general issue. Trial was had January 4, 1927, which resulted in a verdict and judgment for appellee in the sum of $1,000, from which appellant duly prosecuted this appeal. As to the situation at the scene of the accident, the evidence revealed the following:

Appellant's tracks run practically east and west at the place of the accident. Johnson street runs north and south, crossing said tracks at right angles. East of Johnson street one block, and parallel therewith, is Stuart street, and east of that street about two blocks is a St. Louis & Southwestern Railroad crossing over appellant's track, and considerably further east is a Texas Midland Railway track over said appellant's track. West of Johnson street one block, and parallel therewith, is Stonewall street. The blocks between said streets are about 220 feet wide. North of appellant's main line, and immediately east of and adjoining Johnson street, is a building occupied by Waples-Platter Grocery Company, and between that building and said main track are two switch tracks, one adjoining and north of the main track, and the other adjoining and south of said grocery building. Between said switch tracks there are located a coal office, coalhouse and scales, a large signboard, and a fence. At the time of the collision, the switch track next to the grocery building had a box car standing on and extending to the line of the sidewalk, and there were three to six box cars on the switch track next to the main line.

The issues submitted to the jury as to appellant's negligence were: First, excessive speed of the train; second, failure to sound whistle; third, failure to ring the bell. As to appellee, her own contributory negligence in failing to discover the approach of the train; to hear and note the signals, if any, that were given as to the approach of said train, and her acquiescence in or assenting to Ponder's negligent operation of the Ford coupé.

Although not presented in the natural sequence of the assignments of error on which appellant's propositions are based, we will, in our discussion of the case, follow the order in which appellant's propositions have been presented in its brief.

[1] By its first proposition, appellant contends that:

"Having duly excepted to the charge of the court because it failed to limit to impeachment purposes solely the testimony of three jurors in a former trial of this cause, namely, Barber, Gregory, and McGee, introduced to impeach the testimony of appellant's witness, and Engineer Rowell, and appellant having further specially requested a charge in point, the trial court erred to the prejudice of appellant in ignoring said exception and refusing said requested charge, because the said impeaching evidence was not admissible, and could not be considered by the jury in determining other issues involved in the case."

Countering said proposition, it is contended by appellee that:

"Where the party calling a witness has vouched for or adopted his former testimony by having called said witness and offered his testimony at such former trial, then proof of such former testimony of the witness is admissible in the instant trial against said party calling him as original testimony."

On the last trial of this cause, said Rowell, in reference to the place of the collision, testified as follows:

"In backing the engine up like it was being operated that night, I was on the south side of the engine, the south side going west. I did not see the approaching automobile. I did get a stop signal. I got it from the foreman, Mr. Stephens. He was on the south end of the rear footboard on the west end of the tender and on the south side. When I got that signal, we had the street covered. The rear end of the tender was at the edge of the walk, or on the walk on the west side of the street."

Appellant adduced the testimony of W. H. Barber, C. G. Gregory, and George McGee, three of the jurors on the former trial of this cause, as to the testimony of said Rowell at said trial, each in effect testifying that he heard the Engineer Rowell testify at said trial, and that at that time he testified that just after the engine and tender—the footboard of the tender where the switch crew was standing—approached or reached the sidewalk on the east side of Johnson street, he got a signal from a watchman on the foot-

board to stop, and that he put his brakes into emergency to stop.

The facts testified to by the witness Rowell on the former trial, as shown by the testimony of said three former jurors, were material, likewise the testimony of said witness, Rowell, at the last trial, to the defense urged by appellant to appellee's cause of action. The question for us to decide is whether or not the testimony of said three former jurors should have been limited, as requested by appellant in its special charge, to be considered by the jury for impeachment purposes only of the witness Rowell, or whether or not, as contended by appellee, the testimony of said three former jurors, being in reference to a specific material fact, was properly admitted as original testimony against appellant on the ground that, by offering the testimony of the witness Rowell on the former trial, as testified to by said former jurors, same was an admission by or a declaration against the interest of appellant, under the circumstances, that same was introduced so as to make same admissible as original testimony not conclusive as to the facts testified to, but to be received by the jury and given such probative effect as in their judgment same might be entitled to. Appellee's counter-proposition embraces the full spirit and purport of the holding announced in Richards v. Morgan, 10 Jur. (N. S.) 559, 564, decided in 1864, opinion by Cockburn, L. C. J. In reference to this particular question, the learned judge made the following observations:

"In principle, there can be no difference whether the assertion or admission be made by the party sworn to be affected against himself or by some one employed, directed, or invited by him to make the particular statement on his behalf. In like manner, a man who brings forward another for the purpose of asserting or proving some fact on his behalf, whether in a court of justice or otherwise, must be taken himself to assert the fact which he thus seeks to establish. * * * Where a witness is called for the purpose of proving a particular fact, this amounts to an assertion of that fact by the party who so uses his testimony. And in this respect, I must observe that I can see no difference between written and oral testimony. For while I concur in the position that the evidence of a witness called on a trial is not necessarily nor to the full extent to which it may go admissible against the party calling him in a future proceeding, yet if it can be shown that the witness was called to prove a specific fact, it appears to me that this would be admissible as an assertion of such fact by the party calling the witness. * * * Bearing in mind that the true ground on which such evidence is admissible is that a party seeking to establish a fact by evidence in a court of justice must be taken (in that litigation) to assert the fact he so seeks to prove. It seems to me to follow on the one hand that oral evidence, so far as it shall appear to have been used to establish a specific fact will (in subsequent litigation) be evidence against the party using it as an assertion of that fact, and on the other, that written evidence will be admis-

sible against the party using it in a subsequent proceeding with a different party, not for the purpose of proving all the statements it may contain, but only so far as it shall appear to have been used to establish a given fact or facts."

Along the same lines of reasoning is the opinion rendered by Denman, L. C. J. (1837), in Brickell v. Hulse, 7 Adol. & El. 454, 456. The only case that has been called to our attention, or which we have been able to discover through our own research, adopting the rule announced in Richards v. Morgan, supra, by any of the courts of this country, is the case' of Knapp v. Brotherhood of American Yeomen, by the Supreme Court of Iowa (May 12, 1910), 149 Iowa, 137, 126 N. W. 336. In support of this holding in that case, the following reported cases are cited: Richards v. Morgan, 10 Jur. (N. S.) 559 (Eng.); Bageard v. Consolidated Traction Co., 64 N. J. Law, 316, 45 A. 620, 49 L. R. A. 424, 81 Am. St. Rep. 498; Becker v. Philadelphia, 217 Pa. 344, 66 A. 564.

In the case of Richards v. Morgan, supra, also reported in 4 Best & Smith's Report, 641, the question involved was not founded upon oral testimony, but the written depositions of a witness, whose testimony was offered by one of the parties to that suit, who was not a party to the original suit in which said depositions had been taken. The following quotation from the dissenting opinion by Crompton, Judge, is sufficient to present not only the question before the court for decision, but the facts upon which same was based, viz.:

"The only question in these cases was, whether my Brother Wilde was right in receiving in evidence certain depositions which had been used by the defendant in a previous suit in chancery.

"It appeared that the depositions in question had been used by the real defendant in these actions in a previous suit in chancery instituted by a stranger to all the parties in the present action, and that they had been so used by the defendant for the purpose of proving, against the plaintiff in that chancery suit, the small extent of the acreage of the farm in question, which it was the object of the plaintiff to make out in the present action, so that both the defendant in the suit with the stranger and the plaintiff in the present action sought to use the same depositions for the same purpose."

In reaching a conclusion on this question, Chief Justice Cockburn, delivering the majority opinion, stated:

"Now the contest in the present action being whether an extensive tract of mountain land forms part of Mr. Meyrick's estate, or belongs to the Marquis of Bute, as lord of the manor; and it being clear that, if the acreage and value of the estate were what was contended in the chancery suit by the defendant, the locus in quo, in respect of which for the purpose of the present action the real defendant, Mr. Meyrick, asserts a right of ownership, could not possibly be

included in it, the depositions were offered in evidence on the part of the plaintiff for the purpose of proving what, according to the defendant's own showing, the extent and value of the estate really was. I am of opinion that these depositions were properly admitted in the present action, as assertions made by the real defendant, Meyrick, as to facts material to the issue in the action."

To us it is apparent that the question before the court for adjudication as made by the facts, and which was determined by the court in Richards v. Morgan, supra, was materially different from and involved a state of facts that differentiate same from the Knapp Case, supra, and, therefore, within itself, not authority for the holding in the Knapp Case. It is true that in the discussion of the case Chief Justice Cockburn cites and discusses some opinions supporting the rule announced in the Knapp Case; likewise in the two dissenting opinions authorities are cited and logical discussions urged to the contrary. As to the case of Becker v. City of Philadelphia, supra, we think the following quotation therefrom will be sufficient to demonstrate the inherent weakness of the opinion disposing of said cause as authority for the holding in the Knapp Case. Becker and wife brought suit against the city of Philadelphia for personal injuries sustained by Mrs. Becker by a fall. Mrs. Becker claimed that she was suffering from a particular physical condition. The defendant city urged as a defense that about 10 years prior thereto, in another suit, said plaintiff had recovered against the borough of Clifton Heights for personal injuries, claiming the same physical condition. Plaintiff denied that she had made any such claim, and the city of Philadelphia offered in evidence the record of the prior suit and the stenographer as a witness to show that a physician testified for her on the former trial that she was suffering from such physical condition, said physician having died before the second action was brought.

"This was objected to on the ground that the action against the borough of Clifton Heights, having been brought before the Act of May 8, 1895 (P. L. 54 [Pa. St. 1920, §§ 30–33]), which requires that the rights of husband and wife in cases of this character be redressed in one action, was solely for the wife's benefit, the husband's joinder therein being purely formal; that in the present suit he is claiming to recover in his own right and that, therefore, the record of the earlier suit is res inter alios acta, and consequently not admissible here. The objection might have been valid enough had the effort here been to prove in this way as a substantive fact, admitting its pertinency, that Mrs. Becker at this earlier period suffered from this particular ailment. Whether she did or did not so suffer was wholly aside from the inquiry. She testified in the present case that she had not attempted to recover in the action against the borough of Clifton Heights for uterine disturbance; that she had not sustained such injury in the earlier accident, and had not been treated for any such ailment before her later accident. The purpose of the offer was to discredit her as a witness, and to impute to her want of good faith as plaintiff in the present action. It was pertinent to the issue; how effective was for the jury to say. Dr. Cooper was a witness testifying on behalf of plaintiff. The plaintiff was present at the time he testified according to her own admission. She relied upon his testimony with regard to the nature and extent of her injury, as furnishing a basis upon which she asked the jury to reckon her compensation. She thus adopted and used the declarations and admissions of the witness as her own, and it was the same as though she herself had asserted the fact which they tended to prove. Such is the rule. The purpose of the offer was clearly legitimate, and the mode of proof entirely proper."

As to the case of Bageard v. Consolidated Traction Co., supra, we think the following quotation therefrom sufficient to show that the same question before the court in the Knapp Case was not involved in the decision of the Bageard Case, and, therefore, not authority for the holding in the Knapp Case, viz.:

"As the case may be retried, attention should be called to two incidental errors in the rulings at the trial. One was with respect to the evidence on the trial of the former action. At that trial the plaintiff testified to an entirely different condition of affairs from that developed at the trial now under review. This was his testimony: 'I alighted from the car after it stopped; I alighted and walked towards the ferry,' and as I was walking up the hill and turned to go to the ferry, a car struck my right leg, threw me to the ground and ran over my foot.' That he so testified, the defendant was permitted to prove, but an offer to prove that at the former trial he produced a witness to corroborate his story, was overruled against defendant's exception, on the ground that the evidence would be hearsay. Such exclusion was erroneous. The evidence was competent on a challenge of the bona fides of the plaintiff's claim. It could not be received as proof of what was deposed, but it might properly discredit the plaintiff. Of course, a party is not bound in one trial by the testimony of a witness produced by him upon a previous trial of the same issue. He may have been disappointed in such testimony. It may have been false or mistaken testimony. But where the point sought to be established is that the plaintiff had previously put forth a different claim, it is permissible to prove not only that he himself asserted it in testimony, but also that he procured others to support him."

We think that the great weight of authority sustains appellant's position. Bageard v. Consolidated Traction Co., supra; Becker et ux. v. City of Philadelphia, supra; McCamant v. Roberts, 80 Tex. 316, 15 S. W. 580, 1054; Hallett & Walker v. O'Brien, 1 Ala. 585.

[2] Of course, it is a well-recognized doctrine that material admissions against interest contained in abandoned pleadings and affidavits, or written statements made by

third parties and used by parties to a suit, may be offered as original evidence in the nature of admissions made by the party filing the abandoned plea or using such affidavit or statement, and within this rule is included written depositions of a witness used by a party to a suit on a former trial thereof. Not as conclusive of the facts to which same may relate, but to be received and considered as other evidence not conclusive in its nature; i. e., to be given by the court or jury passing upon the evidence such probative effect as in their judgment same may be entitled to. Pecos & North Texas Railway Co. v. Lovelady & Pyron, 35 Tex. Civ. App. 659, 80 S. W. 867; Bageard v. Consolidated Traction Co., supra, and cited cases on this question.

We are, therefore, of the opinion that the court erred in not limiting the testimony of said three jurors to be considered by the jury for impeachment purposes only of the witness Rowell, and that the special charge requested by appellant so limiting said evidence should have been given.

[3] Appellant contends that the proof failed to establish any negligence on the part of appellant proximately causing the injuries alleged to have been sustained by appellee; that therefore appellant was entitled to the peremptory verdict requested. To this we cannot agree, for the evidence unquestionably raised the issues as to the excessive speed of the train, the failure of the train crew to sound the whistle, and the failure to ring the bell. The fact that there was evidence pro and con upon these respective issues, regardless of whether the weight thereof should be on the one side or the other, required the submission of same to the jury, it being for the jury, under the evidence raising said issues, to determine appellant's negligence in either or all of said respects, the evidence thereon not being conclusive one way or another.

On the issue of negligence as to speed, George Ponder, the party at the steering gear in charge of the automobile, testified that the train was running 20 or 25 miles an hour, and witness McNatt said it was running 18 or 20 miles an hour. On this issue, said testimony was sufficient to require the submission of same to the jury. On the issue as to the sounding of the whistle and ringing of the bell, witness Bird testified the bell was not ringing, and he did not hear any whistle down in the yard or where the signal was usually given for that crossing. Appellee testified that she did not hear either of such signals. It was agreed that the city of Greenville, at the time of this accident, had an ordinance forbidding engines to cross the public streets of Greenville at a greater rate of speed than 10 miles an hour, also that the bell on the engine should be started ringing not more than 80 rods from the crossing, and be kept ringing until the crossing was passed. This was sufficient to require the submission of the issues in reference to the ringing of the bell and the sounding of the whistle to the jury.

It is contended by appellant in its fourth proposition that:

"All the testimony in point showing that the auto was driven into the train, that the following portion of the court's charge, 'That as a proximate result of said train being operated at a greater rate of speed than 10 miles an hour, if it was, the engine of said train and the automobile of George Ponder collided,' was plainly prejudicial as on the weight of the evidence."

The following evidence refutes this proposition, viz.:

George Ponder testified as follows:

"I turned my car and almost missed the train. The west end of the engine or tender just caught the car."

Appellee testified:

"The collision occurred on the right-hand side of Johnson street in the edge of the street. It was the back end of the engine that hit the car. The engine was going backwards. The rear end of the engine was in front. The train struck the car somewhere near about the front left wheel under the fender like."

Oscar Bird testified:

"I went on to where the train stopped, halfway between Johnson and Stonewall streets, and the car was still hung onto the train. It was hung on the end of the train."

Said proposition is overruled.

[4] Appellant challenges the correctness of that portion of the twelfth paragraph of the court's charge, placing the burden of proof on appellant to establish contributory negligence, on the ground that:

"It appeared from appellee's own testimony that she was guilty of contributory negligence in the premises in failing to observe ordinary care to avoid said collision."

The charge excepted to was as follows:

"The burden of proof is upon the defendant to establish that plaintiff was guilty of contributory negligence by a preponderance of the evidence in the case."

Appellee testified that, as she approached the crossing where the accident occurred, she looked west and then looked east; that, as she and Ponder, the party she was riding with, approached the railway tracks on Johnson street she was not doing anything only riding along; that when she first saw the train coming, they were opposite the coalhouse, and the train came darting out from behind it; that the front end of the train— the west end of it—was near the sidewalk on the east side of the street when she first saw it; that immediately she threw up her hands and said (speaking to Ponder), "Oh, George, there is a train;" that George did not stop;

he made the turn back west by the track and then there was a collision; that the collision occurred on the right-hand side of Johnson street in the edge of the street; that it was dark at the time of the accident; that there were some box cars on the east side of Johnson street, a coalhouse, a large signboard, and a tall fence that prevented them from seeing the approaching train; that when they were at the Waples-Platter Grocery Company's building they were traveling at about 8 or 10 miles an hour; that she did not hear any bell ringing, did not hear any whistle from the locomotive; that her hearing was good at that time.

George Ponder testified as follows:

"It is a fact that I was not running the car more than 8 or 10 miles an hour, and that I did not see the train until it came out from behind the obstructions. When it came out from behind the obstructions, it was running 20 or 25 miles an hour. Then I turned my car and almost missed the train—the west end of the engine or tender just caught the car."

[5-7] Even conceding that the testimony of appellee was sufficient to establish a prima facie showing of negligence on her part, that fact would not shift the burden of proving contributory negligence from appellant to appellee, because same would leave the question open for the jury to determine, the evidence not being sufficient to establish negligence on the part of appellee so as to render it unnecessary to submit that issue to the jury for determination. Fort Worth Gas Co. v. Cooper (Tex. Civ. App.) 241 S. W. 282; Railway Co. v. Anglin, 99 Tex. 349, 89 S. W. 966, 2 L. R. A. (N. S.) 386; Railway Co. v. Harris, 103 Tex. 422, 128 S. W. 897. However, if appellee's testimony had established that she was guilty of contributory negligence, then the burden would have shifted from appellant to appellee to have relieved herself of the natural sequence that would have followed the proof of such negligence without offering evidence excusing or relieving herself in the mode and manner recognized by law. Railway Co. v. Rooks (Tex. Com. App.) 292 S. W. 536. If appellee had testified that she did not look or listen for the approaching train before attempting to pass over the crossing, such evidence would not, of itself, have been sufficient to establish contributory negligence per se. As a matter of law, such failure would not have constituted negligence, but would have remained an issue to be submitted to the jury for its determination. Texas & New Orleans Ry. v. Harrington, (Tex. Com. App.) 235 S. W. 188.

[8] Appellant insists that the evidence established that appellee and George Ponder, with whom she was riding, were engaged in a joint enterprise at the time of said collision, and therefore the negligence of the said George Ponder would be attributed so as to become the negligence of appellee; that, therefore, appellant was entitled to and the court erred in refusing to give its requested charge on joint enterprise. The following is all of the evidence we have been able to gather from the records bearing on this question, viz.:

Appellee testified:

"On the first day of November, 1925, I was at the West End Café a colored café. I was waiting table there. I was not doing very much of anything that evening, and I went down the street to see Preacher Kircher. I did not see George Ponder in the café when I got there. He came while I was there. When I was fixing to leave, I started up the street on my way down the flat. His car was parked by the side of the street, and he asked me where I was going, and I said I was going down to the flat, and he said 'I am going, get in and ride,' and I got in and started. George was driving the car. He had the management and control of it. I did not have anything to do with driving the car."

George Ponder testified:

"I was driving in a car with Willie Cotton at the time of the accident. I picked her up at the West End Café. I was up there in my car standing and talking to another boy. I was telling this boy I was going down to the flat to eat supper, and she spoke up and asked permission to ride with me. She asked if she could ride with me, and I told her, 'yes.' That is correct. That was the first intimation I had about her riding with me. I had charge of the car and was driving, and I was running it myself. She did not have anything to do with running the car—not a thing in the world."

Appellant's special charge No. 9, given by the court, was as follows:

"You are instructed that, though you may find that the plaintiff was riding in said automobile at the invitation of George Ponder, yet if you believe from the evidence that the said George Ponder, immediately before and at the time of the accident, was operating said automobile in excess of 20 miles per hour, if he did, in approaching said crossing, and that she knew of that fact, and you further believe that the plaintiff acquiesced and consented thereto, then she would be guilty of 'negligence' as that term has been heretofore defined, and if, as a result of the operation of said automobile at an excessive rate of speed, it occasioned the injury to plaintiff and was the proximate cause thereof, as the same has been heretofore defined, you will find in favor of the defendant."

The court's general charge required appellee to exercise ordinary care generally for her safety.

We do not think that the evidence disclosed any other relationship between said parties than that appellee was a guest of George Ponder, who was in charge of and in control of the operation of said automobile. It excludes that plaintiff had any control or authority over either the said Ponder or said automobile, and no other inference can be drawn therefrom but that said automobile was under the exclusive control and management of said Ponder, and hence no issue of

joint enterprise was in the case. Northern Texas Traction Co. v. Woodall (Tex. Civ. App.) 294 S. W. 873. By said special charge No. 9, given at the request of appellant, a materially different and proper issue under the development of the case was submitted, for, notwithstanding the fact that appellee was not engaged in a joint enterprise with the said George Ponder at the time of the collision in question, yet if she acquiesced in said Ponder driving the automobile in which they were riding at a negligent speed, his negligence would then be imputed to her and she could not recover. This, because the fact that she was merely a guest of the said Ponder, would not relieve her of exercising ordinary care generally for her safety.

In view of the fact that another trial awaits the issues between the parties, we do not feel called upon to further discuss the material facts, it not being necessary to do so in order to dispose of the remaining questions.

We have carefully examined the other propositions, and, finding no error revealed in the record as contended, same are overruled. By reason of the error hereinabove pointed out, we are of the opinion that said judgment should be reversed and remanded for further proceedings, and it is so ordered.

Reversed and remanded.