## GURLEY v. PILGRIM OIL CO. (No. 7367.)*

(Court of Civil Appeals of Texas. San Antonio. May 20, 1925. Rehearing Denied July 1, 1925.)

1. Evidence ⚖➡591—Party calling his adversary as witness bound, unless he can show that testimony is false.

A party calling his adversary as witness is bound by his testimony, unless he can show by other witnesses or evidence, direct or circumstantial, that testimony is false.

On Motion for Rehearing.

2. Alteration of instruments ⚖➡29—Finding that contract had not been altered after execution sustained under evidence.

In action on contract for drilling oil well, providing that defendant should not have title to casing unless producing oil well was brought in, evidence, especially that of lawyer who drew contract, held to sustain finding that contract sued on was original contract and had not been changed after execution, as contended.

3. Appeal and error ⚖➡994(3), 1012(1)—Trial court, without jury, is sole judge of weight of testimony and credibility of witnesses.

A trial court, sitting without a jury, is, like a jury, the sole judge of weight of testimony and credibility of witnesses.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Suit by the Pilgrim Oil Company against J. M. Gurley. Judgment for plaintiff, and defendant appeals. Affirmed.

Houtchens & Clark, of Fort Worth, for appellant.

L. J. Wardlaw and J. T. Tuohy, both of Fort Worth, for appellee.

COBBS, J. This suit was filed in the Forty-Eighth district court of Tarrant county by appellee, a common-law trust company, against J. M. Gurley, trustee of the Van Oil Company, based upon a written contract between J. M. Gurley, trustee, and J. W. Carruth, trustee. The latter sold his interest therein to Pilgrim Oil Company, appellee. Appellant answered generally and specially, denying every allegation in the petition, and denied that the contract sued upon was the contract executed by the parties, but, on the contrary, was another and different contract, in so far as some of the terms were concerned, and he pleaded that contract in defense.

The principal point of contention between the parties was as to one paragraph of the alleged contract; appellee contending that the true paragraph written into said contract was as follows:

"It is agreed that, in the event Van Oil Company does not bring in a well in paying quantities in accordance with the terms of the lease and contract with the landowners, under the terms of which said well is to be drilled, then in that event the said casing shall be returned by J. M. Gurley, trustee, and the Van Oil Company, to J. W. Carruth, trustee; but if a well be brought in by the Van Oil Company, producing oil or gas in such paying quantities, then the said casing shall become the property of the said J. M. Gurley, trustee for the said Van Oil Company."

The appellant contended that, before the said alleged contract was signed, the paragraph last above quoted was changed to read as follows:

"It is agreed that, in the event Van Oil Company does not drill the well to the required depth in accordance with the terms of the lease and contract with the landowners, under the terms of which said well is to be drilled, then and in that event said casing shall be returned by J. M. Gurley, trustee, and the Van Oil Company, to J. W. Carruth, trustee; but if a well be drilled by the Van Oil Company to the depth required, by his contract with the owners, then the said casing shall become the property of said J. M. Gurley, trustee for the said Van Oil Company."

According to the contracts, as alleged both by the appellant and the appellee, there was a conditional sale of 3,500 feet of 6⅝-inch casing; the consideration being 6,000 shares of capital stock of Van Oil Company, which were delivered, represented by the appellant, J. M. Gurley, with the further condition, upon which the appellant and the appellee disagreed, and which forms the issue in the case; the appellee contending that said casing reverted to the said J. W. Carruth in the event a well was not brought in producing oil or gas in paying quantities, while the appellant contends that said casing reverted to the said J. W. Carruth only on the condition that the appellant failed to dig said well to the depth of 3,500 feet.

The appellee contended in the trial below that the contract between the said J. W. Carruth and J. M. Gurley was changed after the execution thereof, and was made to provide that said casing was to be returned to J. W. Carruth only in the event the appellant failed to dig the well to the depth of 3,500 feet, instead of his failure to bring in a well producing oil or gas in paying quantities. The appellant in the court below contended that the contract was originally drawn up by J. W. Carruth or his attorney, and that, when the appellant appeared in the office of the said J. W. Carruth for the purpose of executing the contract, he objected to the provision

---

⚖➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error granted November 25, 1925.

providing that said casing was to be returned to J. W. Carruth, should the appellant fail to bring in a well producing oil or gas in paying quantities, and refused to sign same, and that after discussing the same it was agreed between the parties that said contract should be changed, and that the same was so changed, and made to read that the casing was to revert to the said J. W. Carruth only in the event appellant failed to dig said well to the depth of 3,500 feet. In other words, the appellee in the court below charged the appellant with fraudulently changing the terms of the contract, after the execution thereof. The court below overruled the general demurrers and special exceptions of the defendant. The appellant, by way of verified answer, denied their execution of the contract as sued upon by the appellee in the court below. Said cause was tried before the court without a jury, and the court, on the 2d day of February A. D. 1924, rendered judgment in favor of the appellee against the Van Oil Company and J. M. Gurley individually, for $3,028.25.

We overrule appellee's motion that we do not consider appellant's assignments of error. They are sufficient to present error, raised properly below.

The first proposition of appellant is:

"When, in support of its cause of action, the plaintiff places the defendant upon the witness stand, and the effect of his testimony is to unequivocally deny plaintiff's right of recovery, the court may not, in the absence of any other evidence, arbitrarily disregard the defendant's testimony, and render judgment adverse to the only evidence introduced in the case."

In support of that proposition appellant sets out the testimony of appellant, in part as follows:

"There was just one contract executed between me and J. W. Carruth with reference to the drilling of this well; that is, just one in duplicate, and that was made in the office of Carruth, Fort Worth, Tarrant county, Tex. I don't know where the contract was prepared. I signed the contract. If Judge Brown acknowledged that, I don't remember it being him. It might have been him; I can't say that it was. I acknowledged and signed the contract in Carruth's office. I did not sign a contract reading as follows: 'It is agreed that, in the event Van Oil Company does not bring in a well in paying quantities in accordance with the terms of the lease and contract with the landowners, under the terms of which said well is to be drilled, then and in that event said casing shall be returned by said J. M. Gurley, trustee, and Van Oil Company, to J. W. Carruth, trustee; but if a well is brought in by Van Oil Company producing oil or gas in such paying quantities, then said casing shall become the property of said J. M. Gurley, trustee for Van Oil Company.' I did not execute any contract at all in Judge Brown's office. I didn't sign it in Judge Brown's office. I will say that I did not execute any such contract as that in any office. Mr. Lucas got this con-

tract up, and brought it in to us, and we read it over. The features that were objected to Carruth, and I argued over for a little bit, and finally Carruth said, 'All right, we will go ahead and change that;' and Mr. Lucas says, 'All right, I will have it fixed in a few minutes;' and so he goes out of the room and comes back with the contract, and we read it over, and he says, 'That is all right;' and I executed the contract, and that wasn't the contract that had the terms and conditions you read to me."

We copy that testimony, because the error vel non committed on the trial will be determined by this assignment. It is a very dangerous thing to call your adversary to the witness stand to testify. It was a very dangerous thing to do here, for the appellant's testimony, as might be anticipated by his answer on file, would support his case. We start off with a case which, as proven by appellee, establishes appellant's defense. To disprove this testimony, among other witnesses, Marvin H. Brown, the lawyer who drew the contract, was offered by appellee, who swore as follows:

"As to whether or not the terms were as it is here, that was two years ago, Mr. Wardlow, and of course a man testifies simply as to his best recollection under those circumstances. After I dictated it, I gave both copies to Mr. Carruth, and kept my carbon. I made an original and two carbons. Mr. Carruth's office at that time was in the Dan Waggoner building, and my office was in the W. T. Waggoner building, exactly two blocks apart. I can't say how long it was after I gave Mr. Carruth the two contracts before he came back with the signed instruments; but it wasn't right away. I hate to say; it was either in July or August. I can't say positive which month, but it was about two months later. I brought this contract back with other papers, quite a bunch of papers. I do not have an independent recollection of the conditions contained, or the exact words contained, in any of them; that is absurd. I did not get the carbon copy I had and compare it with the one he brought back, that relates to the Gurley matter. I turned the papers over to the Pilgrim Oil Company in the summer of 1922, nearly two years ago. I could not make the statement that there could not have been any change in the verbiage of the contract signed by Mr. Gurley and Mr. Carruth, different from the carbon copy I had in my file. I would not say that I couldn't be mistaken with reference to the fact that this language in the copy which he brought back that was in the language I had in the copy in my office."

This testimony is too negative and unsatisfactory, and fails in toto to show any contradiction of the positive testimony of appellant. It does not contradict appellant's sworn testimony at all, and has no probative force. No other witness who was offered by appellee was present at the time of the execution of the contract. It was shown that there was present at the time the contract was executed, and at the time of the discussion as to the change in the terms thereof,

the appellant, Mr. J. W. Carruth, Mr. Bob Lee, and Mr. Lucas, an associate of the said J. W. Carruth, and the stenographer in the office of the said J. W. Carruth, who made the changes. Mr. Carruth, a party to the contract, and from which the appellee alleged to have purchased the same, was not made a party to the suit, nor was his testimony adduced upon the trial of the case. Mr. Lucas, who was present at the time of the execution of the contract, and an associate of J. W. Carruth, was not made a party to the suit, and his testimony was not adduced upon the trial of the case. The notary public who took the acknowledgment at the time of the execution of the instrument was not placed on the witness stand upon the trial of the case. The stenographer, who was at that time in the office of the said J. W. Carruth, and who was alleged to have made the changes in the contract, was not present or placed upon the witness stand, nor the failure to produce her testimony accounted for. Only two of those who were present at the time of the execution of the contract testified, and each one positively testified that the said contract was changed and made to read that the appellant was to receive the casing in question if he drilled said well to a depth of 3,500 feet.

[1] A party who calls his adversary as a witness is bound by his testimony, unless he can by other witnesses or evidence, direct or circumstantial, show that the testimony is false, as said in Starkey v. Wooten Grocery Co. (Tex. Civ. App.) 143 S. W. 692; Steed v. Wren & Berry (Tex. Civ. App.) 194 S. W. 963; Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059; De Shazo v. Eubank (Tex. Civ. App.) 191 S. W. 369. It is held in Sullivan v. Fant et al. (Tex. Civ. App.) 160 S. W. 612:

"Where the evidence tends to establish a fact which it is within the power and to the interest of the opposing party to disprove, if false, his failure to attempt to disprove it strengthens the probative force of the evidence tending to prove it."

We think there is a total absence of any material evidence in this record to support the judgment of the trial court, and therefore the judgment is reversed, and the cause remanded for another trial.

### On Motion for Rehearing.

[2] Upon a very careful review of the testimony of all the witnesses from the statement of facts, we have reached the conclusion that we did not give to the testimony of Marvin Brown and other witnesses the degree of weight it deserves. Mr. Brown, a very able and painstaking attorney, drew the contract and kept an original carbon copy in his office file, as a painstaking and careful lawyer always should do. Subsequently he had in his hands the Carruth original contract, which he compared with the carbon copy kept by him, which original, unchanged, was delivered by him to appellee as its property.

[3] This case was tried by the court without a jury. The judge had before him the witnesses, and, like a jury, was sole judge of the weight of testimony and the credibility of the witnesses. Brown, a very intelligent lawyer, testified among other things:

"I saw the contract after it was executed. * * * I did see it. * * * I had it in my hand, and saw it in Mr. Carruth's files; * * * after he executed it, he returned it to my office; * * * it had absolutely no change in the world in it. * * * It did not contain any such provision as the provision that is attached to the carbon copy that you now present to me. * * * It is my recollection, and I don't think I could be mistaken about it, that the original contract—the duplicate original— contained the same terms and conditions as it did when I wrote it. That is my recollection, and I don't think I could be mistaken about that."

"Testimony of an intelligent lawyer, who read the instrument for a special purpose, is also cogent evidence." "The fair and impartial testimony of an experienced lawyer, who drew the document and gave the transaction his careful personal attention, is perhaps the strongest direct evidence that could be produced." 23 C. J. p. 36, "Evidence"; Davie v. Terrill, 63 Tex. 106; Railway v. Lovelady, 35 Tex. Civ. App. 659, 80 S. W. 867; Railway v. Crump, 102 Tex. 253, 115 S. W. 26.

A careful reading of all the testimony of all the witnesses convinces us we should not have reversed the judgment of the trial court, because there was evidence to support it. Walker v. Cole, 89 Tex. 323, 34 S. W. 713; O'Fiel v. King (Tex. Civ. App.) 23 S. W. 696; Prideaux v. Glasgow, 2 Tex. Civ. App. 182, 21 S. W. 276.

For the reasons given, the motion for rehearing is granted, and the former judgment, reversing the judgment of the trial court and remanding the case for another trial, is set aside, and the judgment of the trial court is affirmed.